IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACK MATTHEW HOGAN, | No. 3:23-cv-00765-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Don Corson
The Corson & Johnson Law Firm
940 Willamette St, Ste 500
Eugene, OR 97401

    Attorney for Plaintiff

Alison M. Milne
U.S. Attorney's Office
1000 SW Third Ave, Ste 600
Portland, OR 97204

    Attorney for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Jack Hogan sued the United States under the Federal Tort Claims Act ("FTCA") after he was injured on federal land. Defendant moves to dismiss for lack of subject matter jurisdiction, asserting that sovereign immunity bars Plaintiff's suit because the discretionary function exception to the FTCA applies. Def. Mot. to Dismiss, ECF 7. Defendant also moves to dismiss for failure to state a claim. *Id.* For the following reasons, the Court denies the motion.

## BACKGROUND

On or about October 4, 2020, Plaintiff Jack Hogan was riding in a motor vehicle traveling north on the Fields-Denio Road, also known as the East Steens Road, in Harney County, Oregon. Compl. ¶¶ 11, 24, 26, ECF 1. The relevant stretch of road is on land owned by the United States and managed by the Bureau of Land Management ("BLM"). *Id.* ¶¶ 15, 18, 26. Plaintiff was a restrained passenger in the front seat of the vehicle. *Id.* ¶ 27. The surface of the road "allowed for significant amounts of dust to be created during windy conditions and/or when other vehicles traveled the roadway." *Id.* Due to the dust, the driver of the vehicle operated "in part by reference to the right edge of the roadway." *Id.*

A cattle guard was positioned on the road, separating two grazing allotments managed by the BLM. *Id.* ¶ 18. The cattle guard was approximately 20 feet wide, while the road was wider than 20 feet. *Id.* ¶ 21. The cattle guard wing extended into the east side of the roadway. *Id.* There were no advance warning signs or markings for northbound drivers to alert them of this. *Id.* ¶ 23. The object marker for the cattle guard on the east side of the road was the improper marker and was improperly placed. *Id.* The driver of the vehicle in which Plaintiff was traveling suddenly saw the cattle guard wing and swerved to avoid striking it. *Id.* ¶ 27. The driver lost control of the

2 – OPINION & ORDER

vehicle, which rolled over. *Id.* Plaintiff, then age 26, was seriously and permanently injured. *Id.* ¶ 28.

Plaintiff alleges that the BLM previously granted Harney County a non-exclusive right of way over the land. *Id.* ¶ 24. The right-of-way "did not require Harney County to inspect, maintain, modify, or repair the described cattle guard." *Id.* ¶ 24. Plaintiff gave Defendant notice of his tort claim. *Id.* ¶ 5. Defendant denied the claim. *Id.* ¶ 6. Plaintiff sued Defendant on May 25, 2023, alleging that Defendant was negligent in the positioning, inspection, and maintenance of the cattle guard, and in failing to adequately mark or warn of the cattle guard. *Id.* ¶ 29. Defendant now moves to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

## STANDARDS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss based on sovereign immunity is evaluated under Rule 12(b)(1). *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979-80 (9th Cir. 2007) (court treats motion attacking substance of complaint's jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the

3 – OPINION & ORDER

substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal quotation omitted). Additionally, the court may consider evidence outside the pleadings to resolve factual disputes. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier*, 106 F.3d at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may "rely on affidavits or any other evidence properly before the court").

**II.    Motion to Dismiss for Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-

pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id. at 679*.

## DISCUSSION

The Court concludes that Defendant has not met its burden to show that the discretionary function exception applies. The Court also concludes that Plaintiff has stated a claim for relief. Therefore, the Court denies Defendant's Motion to Dismiss.

**I.     Discretionary Function Exception**

   A.     Standard

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994). The United States may waive sovereign immunity and consent to suit. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The FTCA, 28 U.S.C. §§ 1346, 2671-80, waives the United States' sovereign immunity for tort actions and vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of government employees." *Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017).

The FTCA delineates several exceptions to the waiver of sovereign immunity. 28 U.S.C. § 2680. Relevant here, the waiver of sovereign immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.* § 2680(a). Under this exception, "negligence in performing discretionary functions is not actionable." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000). "The United States

bears the burden of proving the applicability of the discretionary function exception." *Bailey v. United States*, 623 F.3d 855, 859 (9th Cir. 2010).

"The Supreme Court has prescribed a two-part test for determining whether the discretionary function exception applies." *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (citing *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). "First, courts are to ask whether the challenged action was a discretionary one—that is, it must involve an element of judgment or choice." *Id.* (internal quotations omitted). If a federal statute, regulation, or policy prescribes a course of action, the discretionary function exception does not apply. *Id.* If the first part of the test is met, courts must determine "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536). At the second step, courts should focus "'on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

    B.    Application

Defendant argues that the discretionary function exception applies because the BLM granted a right of way to Harney County, so the County is responsible for inspecting and maintaining the Fields-Denio Road. Def. Mot. 4-5. Defendant asserts that the act of granting the right of way involved an element of discretion and was susceptible to policy analysis. *Id.* at 11-15. Plaintiff counters that the Complaint does not challenge the decision to grant the right of way but rather the width of the cattle guard and the signs and markings associated with it. Pl. Resp. 2, ECF 9. Analyzing the three acts or omissions the parties discuss, the Court concludes that the record is insufficient to establish that the discretionary function exception applies.

                i.       Grant of Right of Way

Defendant submits evidence that the BLM granted a perpetual right of way to Harney County on April 19, 2001, pursuant to the Federal Land Policy and Management Act ("FLPMA"). Rose Decl. ¶ 14, Ex. B. ECF 8. The right of way included the portion of the road where the cattle guard at issue in this case ("Accident Cattle Guard") is located. *Id.* ¶ 15, Ex. B at 3 (area map). Jeffrey Rose, the District Manager for the Burns District of the BLM, states that the County likely had a right of way prior to 2001, but such rights of way were self-executing and not formally documented. *Id.* ¶¶ 1, 8, 10, 12. Plaintiff submits evidence that the County sought a right of way in 2001 because any existing rights were not formally recognized or recorded. Pl. Resp. Ex. A at 5-6 (March 16, 2001, letter from the BLM to the Hon. Steve Grasty, Harney County Courthouse, stating, "the County has never formally asserted its rights, nor has a determination been made by the United States confirming the assertion," and instructing the County to apply for a right of way under FLPMA).

In its 2001 application, the County stated that the right of way was being sought "for County roads in the vicinity of Steens Mountain[.]" Rose Decl. Ex. A at 1. The County stated that it "ha[d] the resources, manpower, and financing available to operate and maintain these County Roads." *Id.* The application also noted, "The Catlow Valley and Fields-Denio Roads are used extensively for interstate travel south into Nevada." *Id.* at 2. The BLM granted the right of way "to construct, operate, maintain, and terminate public roads and highways on public lands[.]" Rose Decl. Ex. B at 1. In granting the right of way, the BLM specified that "[t]he holder shall perform all operations in a good and workmanlike manner so as to ensure protection of the environment and the health and safety of the public." *Id.* at 2. It also stated, "Any construction, reconstruction, or other surface disturbance in undisturbed areas of the right-of-way

7 – OPINION & ORDER

shall require the prior approval of the authorized officer." *Id.* The grant included certain documents labeled Exhibits A and B, *see id.*, which Defendant did not submit with its Motion. The grant does not otherwise specify the obligations of the BLM or the County with respect to road construction or maintenance.

Defendant argues that it granted the right of way to Harney County to maintain and operate the Fields-Denio Road, a discretionary act, so it is not subject to suit here. Def. Mot. 7-8. Plaintiff responds that the Complaint does not challenge the grant of the right of way. Pl. Resp. 2. The Complaint alleges that Defendant granted the County a right of way that was non-exclusive and "did not require Harney County to inspect, maintain, modify, or repair the described cattle guard." Compl. ¶ 24. The Complaint does not allege that the BLM was negligent in granting the right of way. *See id.* ¶ 29.

Defendant submits evidence that at the time of the accident, Harney County treated the Fields-Denio Road as a county road. The County mentioned the road in applying for a right of way in 2001. Rose Decl. Ex. A at 2. The County's transportation plan listed the road as under its jurisdiction as County Road 201. Boyer Decl. ¶ 9, ECF 14 (citing Harney County, Transportation System Plan, at 23-24 (June 2001), *available at* https://www.oregon.gov/ODOT/Planning/TPOD/tsp/county/county_of_harney_tsp_2001.pdf). Defendant argues that it had no obligation to follow any traffic control or signage manuals with respect to the Fields-Denio Road because it is a public road. Def. Mot. 4-5; Def. Reply 4, ECF 13. Citing BLM manuals, Rose states that the BLM does not maintain or expend funds on public roads, and BLM regulations do not apply to them. Rose Decl. ¶¶ 20-22. According to the BLM, a public road is "[p]art of a public agency road system. A public road is not within the BLM's jurisdiction, does not receive support from BLM construction or maintenance funds, and is not subject to BLM regulations." Bureau of

8 – OPINION & ORDER

Land Management, Manual Section 9100 – Engineering, Appendix A at 11 (2008), *available at* https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual9100.pdf. BLM policy also provides that "[m]aintenance, including condition assessments, of non-BLM constructed assets located on BLM lands is the responsibility of the owner(s), unless a formal agreement has transferred such responsibility to the BLM." Bureau of Land Management, Manual Section 9104 – Facility Maintenance, § 1.5(F), (2014), *available at* https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual9104.pdf.

The Court concludes that the grant of the right of way and the BLM manuals on which Defendant relies do not resolve the question of how responsibility for the Fields-Denio Road is allocated between the BLM and Harney County. As Plaintiff points out, a grant of a right of way under FLPMA is "subject to such terms and conditions as the Secretary concerned may prescribe regarding extent, duration, survey, location, construction, maintenance, transfer or assignment, and termination." 43 U.S.C. § 1764(c). As discussed above, the terms and conditions of the right of way at issue here do not appear to assign sole responsibility for road maintenance to Harney County. *See also* Pl. Resp. 28-29. Plaintiff submits evidence that the road may have been constructed by Defendant for military purposes. Pl. Resp. Ex. A, Orloff Decl. ¶ 4. Plaintiff also points out that BLM road standards apply to "all roads constructed on lands administered by the Bureau," including "all Bureau or non-Bureau initiated road construction[.]" Pl. Resp. 6 n.20 (citing Bureau of Land Management, MS 9113 – Roads, at 3-1, (2015), *available at* https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual9113.pdf). The record does not establish that Harney County had sole responsibility for the Fields-Denio Road.

Nor does the record establish who installed the Accident Cattle Guard or was responsible for inspecting and maintaining it. The parties submit competing evidence. The Complaint alleges

9 – OPINION & ORDER

that the Accident Cattle Guard is located "[i]n Township 31S, Range 35E, Section 29 possessed by the United States of America." Compl. ¶ 18. It includes a photograph of the Accident Cattle Guard as viewed by a northbound traveler such as Plaintiff. *Id.* ¶ 21. Citing to a BLM map of the area, Plaintiff explains that the Accident Cattle Guard is located "at the road south of where Summit Creek crosses the road." Pl. Resp. 3 n.4 (citing Pl. Resp. Ex. D).

The Complaint alleges that the Accident Cattle Guard is "approximately 20 feet in width." Compl. ¶ 21. Plaintiff attaches a declaration from Massoud Saberian, an engineer, who visited the location of the accident and states that the cattle guard "measures approximately 20 feet, 1 inches wide (from side to side)." Pl. Resp. Ex. E ("Saberian Decl.") ¶¶ 2, 4, 5. Saberian states that the road measures "approximately 25 to 26 feet wide" when approaching the cattle guard from the south. *Id.* ¶ 6. Attached to Saberian's declaration is a photograph that appears to show the same cattle guard as the photograph in the Complaint. *Compare* Compl. ¶ 21 *with* Pl. Resp. Ex. E at 9.

Plaintiff also submits a declaration from Tim O'Byrne, who states that he has "extensive experience with cattle guards." Pl. Resp. Ex. B, O'Byrne Decl. ¶ 2. O'Byrne states that he interviewed several individuals and examined photographs and documents, including a photograph of the Accident Cattle Guard. *Id.* ¶ 7, Ex. B at 6. O'Byrne states that no one he spoke with claimed personal knowledge of or documentation regarding when or by whom the Accident Cattle Guard was installed. *Id.* ¶ 11. He opines that the Accident Cattle Guard "more likely than not was installed by or at the direction of the BLM." *Id.* ¶ 12. He states that he believes the Accident Cattle Guard is the Mann Lake Cattle Guard. *Id.* ¶ 8. Attached to O'Byrne's declaration is a photograph that appears to show the same cattle guard as the photograph in the Complaint. Compare *Compl.* ¶ 21 *with* Pl. Resp. Ex. B at 6.

10 – OPINION & ORDER

Defendant asserts that the Accident Cattle Guard is not the Mann Lake Cattle Guard. Def. Reply 8-9. The BLM's database states that the BLM is the administrator of the Mann Lake Cattle Guard. Rose Reply Decl. ¶ 18, Ex. D, ECF 15. The BLM has records of the installation and maintenance of the Mann Lake Cattle Guard. *Id.* ¶¶ 8-11, Ex. C. Both these records and the BLM's database show that the Mann Lake Cattle Guard is located on the Mann Lake Access Road next to Mann Lake. *Id.* Exs. C, D. Plaintiff states that the Accident Cattle Guard is located just south of Summit Creek. Pl. Resp. 3 n.4. The maps the parties submitted show that the Accident Cattle Guard is not in the same location as the Mann Lake Cattle Guard. Rose Reply Decl. Ex. F; Pl. Resp. Exs. C, D. Further, while the parties agree that the Accident Cattle Guard is about 20 feet wide, the Mann Lake Cattle Guard is 16 feet wide. Rose Reply Decl. ¶ 9, Ex. C at 1, 2. Defendant has shown that the Accident Cattle Guard is not the Mann Lake Cattle Guard.

In the BLM records Defendant submitted, the cattle guard located near Summit Creek is labeled "County Cattleguard." Rose Reply Decl. Ex. E. Those records also indicate that the administrator responsible for the cattle guard is undetermined. *Id.* It appears that the cattle guard labeled "County Cattleguard" in the BLM's system is the Accident Cattle Guard. Rose states that he found no records for that cattle guard in the BLM's system, indicating that it was not installed by the BLM or at the BLM's direction. Rose Reply Decl. ¶ 16. Plaintiff submits evidence that he asked Harney County for information about installation and maintenance of the Accident Cattle Guard, and the County found no records. Pl. Resp. Ex. F (letter from the County stating that it found no records). The record does not establish who installed the Accident Cattle Guard or is responsible for inspecting and maintaining it.

On this record, the Court cannot conclude that Defendant is not responsible for the conditions alleged to have caused Plaintiff's injury. The terms of the right of way do not resolve

the issue. Even assuming that granting the right of way to Harney County was an exercise of discretion not actionable under the FTCA, it is not apparent that Defendant thereby ceded all responsibility for the Fields-Denio Road or the Accident Cattle Guard. On this record, the grant of the right of way is not a basis to dismiss this case for lack of subject matter jurisdiction.

The parties dispute whether Defendant as the landowner could delegate any duty to inspect and maintain the Accident Cattle Guard to the County. Def. Mot. 15-16; Pl. Resp. 32-34. The scope of the parties' rights and duties under the right of way is unclear on the record as it stands. As it is unclear whether or to what extent Defendant delegated responsibility for the Accident Cattle Guard to the County, the Court need not address whether such delegation was permissible. The parties may raise the issue again on a more developed record. Assuming that Defendant was responsible for the conditions that caused Plaintiff's injury, the discretionary function exception would still bar Plaintiff's claims if it covers the acts and omissions alleged in the Complaint, which concern the width of the cattle guard and the signs and markings associated with it. *See* Compl. ¶¶ 21, 23, 29. The Court turns to those acts and omissions.

        ii.        Width of Cattle Guard

In opposing the Motion to Dismiss, Plaintiff argues that the discretionary function exception does not apply because the Accident Cattle Guard is narrower than the width mandated by applicable BLM standards. Pl. Resp. 7-8; Compl. ¶ 21. The BLM's Roads Manual provides:

> Bridges, culverts, tunnels, cattleguards, and other structures must have a minimum curb-to-curb or rail-to-rail width (whichever is less) of 14 feet for single lane roads and 24 feet for double lane roads, but in all cases not less than the nominal width of the adjacent travelway as measured at right angles to the road centerline.

MS 9113 – Roads § 3.5. This provision does not allow for an exercise of discretion, and Defendant does not argue otherwise. The provision uses mandatory and absolute language including "must" and "in all cases" in setting specific cattle guard width requirements for single-

12 – OPINION & ORDER

and double-lane roads. It dictates how to measure the nominal width of the adjacent travelway. The provision fails the first part of the two-part test, so the discretionary function exception does not bar Plaintiff's claim insofar as it challenges the width of the Accident Cattle Guard.

### iii. Inadequate Signs and Warnings

Plaintiff also argues that the alleged failures in marking and warning of the Accident Cattle Guard are not subject to the discretionary function exception. Pl. Resp. 9-13. The Complaint alleges that the eastern object marker for the Accident Cattle Guard was the improper marker and was improperly placed, and that there were no advance warning signs or markings. Compl. ¶ 23. The BLM's National Sign Handbook states that the Manual on Uniform Traffic Control Devices ("MUTCD") "is the national standard for all traffic control devices, including signs, markings (e.g., white and yellow pavement lines), and other devices used to control traffic on all roads open to public travel." Bureau of Land Management, National Sign Handbook, at 2 (2016), *available at* https://www.blm.gov/sites/default/files/documents/files/NationalSign Handbook16_0.pdf. There is no dispute that the Fields-Denio Road is open to public travel. The MUTCD specifies the permissible types of object markers, dictating the design and size of each. Fed. Hwy. Admin., Manual on Uniform Traffic Control Devices § 2C.63 (2009, rev. 2022), *available at* https://mutcd.fhwa.dot.gov/pdfs/2009r1r2r3/mutcd2009r1r2r3edition.pdf. The MUTCD states, "Obstructions within the roadway shall be marked with a Type 1 or Type 3 object marker. In addition to markers on the face of the obstruction, warning of approach to the obstruction shall be given by appropriate pavement markings." *Id.* § 2C.64. It also states, "The alternating black and retroreflective yellow stripes (OM3-L, OM3-R) shall be sloped down at an angle of 45 degrees toward the side on which traffic is to pass the obstruction." *Id.*

These provisions dictate the types of markers that must be used for obstructions within the roadway and the orientation of those markers. They also require advance warning of obstructions in the road. They do not allow for an exercise of discretion. *See Soldano v. United States*, 453 F.3d 1140, 1148 (9th Cir. 2006) (discretionary function exception did not apply to decision to set speed limit of 35 mph on road when applicable standards provided that a speed limit of no more than 25 mph was acceptable given the stopping-sight distance of the road); *Faber v. United States*, 56 F.3d 1122, 1127 (9th Cir. 1995) (discretionary function exception did not apply to failure to post warning sign by waterfalls where agency's applicable plan set "three unambiguous directives" for solving specific known safety hazards). Defendant does not argue that the discretionary function exception applies to the posting of object markers and warnings, relying on its argument that the County had sole responsibility for such markers and warnings. Def. Reply 4. Because the record is insufficient to conclude that only the County had such obligations, Defendant's argument fails at this stage of the case. The discretionary function exception does not bar Plaintiff's claims insofar as they challenge the object markers and warnings associated with the Accident Cattle Guard.

In sum, Defendant has not met its burden to show that the discretionary function exception to the FTCA's waiver of sovereign immunity applies. The Court declines to hold at this time that it lacks subject matter jurisdiction over this case, and now turns to whether Plaintiff has stated a claim for relief.

## II.     Sufficiency of Factual Allegations

Defendant also argues that Plaintiff fails to state a claim for relief. Def. Mot. 2. "To succeed in district court under the FTCA, a plaintiff must have suffered an injury, a federal employee must have caused that injury, and state law must offer a legal theory that makes that

14 – OPINION & ORDER

employee's negligence actionable." *Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020). Defendant does not dispute that Plaintiff was injured or that he can sue under Oregon negligence law. *See* Pl. Resp. 15 n.57 (noting a lack of dispute on those points). Nor does Defendant expressly present any arguments under Rule 12(b)(6). As far as the Court can determine, Defendant's argument is that it did not cause Plaintiff's injury because Harney County, not the BLM, was responsible for maintaining the Fields-Denio Road. *See* Def. Mot. 4-5, Def. Reply 3-6. While the evidence Defendant submitted in support of its Motion may tend to support that conclusion, Defendant has not offered a basis on which the Court may consider that evidence in ruling on the Motion under Rule 12(b)(6). The Complaint alleges that the BLM was responsible because the road and the cattle guard are on land owned by the United States and managed by the BLM. Compl. ¶¶ 15, 18. The Complaint also alleges that the right of way granted to Harney County was non-exclusive and "did not require Harney County to inspect, maintain, modify, or repair the described cattle guard." *Id.* ¶ 24. Taking the well-pleaded allegations in the Complaint as true, as required under a Rule 12(b)(6) motion, Plaintiff has stated a claim under the FTCA.

## CONCLUSION

Defendant's Motion to Dismiss [7] is DENIED.

IT IS SO ORDERED.

DATED:_____November 1, 2023_.

_____
MARCO A. HERNANDEZ
United States District Judge

15 – OPINION & ORDER