IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK MATTHEW HOGAN,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 3:23-cv-00765-AB

FINDINGS OF FACT &
CONCLUSIONS OF LAW

**BAGGIO, District Judge:**

This dispute arises out of a car accident in southeastern Oregon. *See* Def.'s Proposed Findings of Fact & Conclusions of Law ("Def.'s FF&CL") 2, ECF No. 190. On October 4, 2020, Plaintiff was riding in the front passenger seat of a vehicle traveling north on East Steens Road when the driver of the vehicle swerved to avoid a cattle guard. *Id.* The driver lost control of the vehicle, and the vehicle rolled, causing serious injury to Plaintiff, including permanent tetraplegia. *Id.* East Steens Road traverses federal land managed by the Bureau of Land

Management ("BLM"), and the cattle guard involved in the accident (the "Cattle Guard") is located in Section 29, Township 31 South, Range 35 East (T31S R35E), Willamette Meridian. *Id*.

In 2023, Plaintiff filed this negligence action against Defendant under the Federal Tort Claims Act ("FTCA"). Compl. ¶ 8, ECF No. 1. Plaintiff alleges that Defendant, through the BLM and its employees and/or agents, was negligent in the following ways:

> a. In having a cattle guard positioning that failed to comply with [BLM] policies and/or standards;
> b. In failing to exercise reasonable care to properly inspect the cattle guard to ensure compliance with [BLM] policies and/or standards;
> c. In failing to exercise reasonable care to discover the unsafe roadway condition;
> d. In failing to properly maintain the cattle guard in compliance with [BLM] policies and/or standards;
> e. In failing to take reasonable and feasible steps to eliminate the unsafe roadway condition;
> f. In failing to warn users, including Plaintiff Jack Hogan, of the unsafe roadway condition;
> g. In failing to have roadway signage and/or markings in conformance with [BLM] policies and/or standards;
> h. In failing to properly inspect the roadway signage and/or markings to ensure compliance with [BLM] policies and/or standards;
> i. In failing to properly maintain the roadway signage and/or markings in compliance with [BLM] policies and/or standards;
> j. In failing to take reasonable and feasible steps to eliminate the unsafe condition caused by the improper roadway warning signage and/or markings.

Compl. ¶¶ 29(a)–(j).

On November 26, 2025, the Court ordered a bench trial to resolve factual disputes relating to the Court's subject-matter jurisdiction—specifically, whether Defendant had established the discretionary function exception to the FTCA. *See* Minutes of Proceedings, ECF No. 134. As the parties agree, if Defendant "proves by a preponderance of the evidence that the discretionary function exception applies, the Court lacks subject matter jurisdiction over Plaintiff's claims." Def.'s FF&CL 2.

From June 15, 2026, to June 17, 2026, the Court conducted a three-day bench trial. What follows is the Court's Findings of Fact and Conclusions of Law. *See* Fed. R. Civ. P. 52(a).[1]

**FINDINGS OF FACT**

1. Section 29 of T31S R35E is entirely federal land. *See* Tr. 131:11–19.

## I. East Steens Road[2]

1. In 1929, Harney County nominated East Steens Road to be added to the County Market Road System. Tr. 398:5–7.

2. The County Market Road System was a program that allowed for the State of Oregon to provide funds to help improve county roads. Tr. 398:7–21.

3. To be eligible for funding under the County Market Road System, a road needed to be a county road. Tr. 399:16–19.

4. In 1930, East Steens Road was added to the County Market Road System. Tr. 398:23–399:5; Ex. 516.

5. Sometime between 1958 and 1968, the current path of East Steens Road was constructed. Tr. 539:6–540:15.

[1] Because the Court's June 15, 2026, to June 17, 2026, bench trial was limited to factual disputes regarding the Court's subject-matter jurisdiction, i.e., whether the discretionary function exception to the FTCA applied, the Court finds evidence relating to liability irrelevant at this stage in the litigation. Accordingly, the Court grants Defendant's Motion in Limine No. 3, *see* Def.'s Mots. in Lim. 14–15, ECF No. 155, and excludes all evidence relating to liability, *see* Pl.'s Findings of Fact & Conclusions of Law ("Pl.'s FF&CL") 20–21, 25–26, ECF No. 187 (discussing duty); *see also Sloan ex rel. Est. of Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643, 437 P.3d 1097 (2019) ("Traditionally, to prevail on a negligence claim, a plaintiff had to prove that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the breach was a factual cause and (4) a legal cause (or proximate cause) of (5) harm to the plaintiff measurable in damages.").

[2] Finding historical evidence regarding East Steens Road from before 1968 as both relevant and admissible under Federal Rules of Evidence 401 and 403, the Court denies Defendant's Motion in Limine No. 1. *See* Def.'s Mots. in Lim. 1–13.

6. Since 1968, East Steens Road has been maintained by Harney County. Tr. 313:5–7; 412:25–413:3.

7. Since 1968, East Steens Road has been considered by Harney County to be a county road part of the Harney County Road System. *See* Tr. 313:20–23.

8. Since 1968, no party other than Harney County has maintained or asserted ownership over East Steens Road, including BLM. Tr. 414:11–415:9.

9. Since 1968, East Steens Road has been open for public travel. Tr. 312:25–313:4; 377:23–25.

10. BLM considers East Steens Road to be a county road part of the Harney County Road System—not a road under BLM's control. Tr. 86:1–10; 101:3–7; 101:23–24; 184:12–14.

11. In 2001, Harney County applied for a right-of-way ("ROW") under the Federal Land Policy and Management Act ("FLPMA") "to convert existing rights-of-way that Harney County may hold . . . for County roads in the vicinity of Steens Mountain[,]" including East Steens Road. Ex. 526, at 1; *see also* Tr. 313:24–314:2.

12. The 2001 ROW application certified that it was for "County Roads that were constructed across Federal lands many years ago" and were "existing, well developed and maintained County Roads." Ex. 526, at 2.

13. In 2001, BLM issued to Harney County a FLPMA ROW, giving Harney County the "right to construct, operate, maintain, and terminate *public roads* and highways on public lands . . . ." Ex. 22, at 1 (emphasis added).

14. The 2001 ROW included the section of East Steens Road traveling through Section 29 of T31S R35E. *See* Ex. 22, at 3; Tr. 97:2–4 (explaining that the south part of East Steens Road is also known as Fields Denio Road).

15. The 2001 ROW did not change preexisting maintenance responsibility for East Steens Road; Harney County continued to maintain East Steens Road and consider it a county road after the ROW. *See* Tr. 261:10–262:5; 313:24–314:13.

16. In 2013, 2018, and 2021, Harney County, with the endorsement of BLM, applied for funding under the Federal Lands Access Program ("FLAP") to make improvements to East Steens Road. Exs. 33, 34, 525; Tr. 262:8–11.

17. In the 2013 FLAP application, the Harney County Road Department identified itself as the agency with title to the proposed project and maintenance responsibility. Ex. 33, at 1; Tr. 262:22–263:2.

18. In the 2018 and 2021 FLAP applications, the Harney County Road Department additionally identified itself as the agency with title and maintenance responsibility to East Steens Road. Ex. 34, at 1; Tr. 264:8–13; Ex. 525, at 1; Tr. 265:7–12.

## II. The Cattle Guard[3]

1. The Cattle Guard sits on the dividing line between the Mann Lake and Pollock grazing allotments. Tr. 590:14–24; Exs. 9, 69.

2. The Cattle Guard connects the Summit Creek Drift Fence where the fence crosses East Steens Road. Tr. 132:24–133:3; Ex. 69; *see also* Tr. 587:1–6.

3. The Summit Creek Drift Fence is a BLM range improvement installed in 1940. Tr. 617:14–22; Ex. 2; Tr. 657:3–8; Ex. 73.

[3] Finding historical evidence regarding the Cattle Guard as both relevant and admissible under Federal Rules of Evidence 401 and 403, the Court denies Defendant's Motion in Limine No. 2. *See* Def.'s Mots. in Lim. 13–14.

4. The Summit Creek Drift Fence separates the Mann Lake and Pollock grazing allotments and extends across Sections 28, 29, and 30, crossing East Steens Road in Section 29. Tr. 434:7–12; 589:14–17; Exs. 1, 69.

5. The Cattle Guard was likely installed by the federal government as part of the Summit Creek Drift Fence project. *See* Tr. 470:20–25; 629:17–630:2.

6. The Cattle Guard is thus a BLM range improvement. Tr. 616:6–9; Ex. 7, at 9, 14.

7. No one other than the BLM benefits from the Cattle Guard. Tr. 657:19–22.

8. Harney County would prefer to remove cattle guards rather than put them in because they disrupt maintenance of the roadway. Tr. 287:16–22.

9. BLM has no documentation indicating that the Cattle Guard was installed by anyone other than BLM. Revised Dep. Designation 28, ECF No. 170.

10. Harney County has no records relating to the installation or maintenance of the Cattle Guard. Ex. 21, at 2; Tr. 476:16–477:2.

11. The only way a private party could have installed the Cattle Guard is by applying for and obtaining BLM approval under a Cooperative Range Improvement Agreement. Tr. 473:12–23.

12. There was no Cooperative Range Improvement Agreement for the Cattle Guard. Tr. 473:24–474:2; 618:21–25.

## CONCLUSIONS OF LAW

### I. Legal Standards

1. Under the FTCA, the United States waives its sovereign immunity for certain tort claims: "The United States shall be liable, respecting the provisions of this time relating to tort claims, in the same manner and to the same extent as a private individual under like

circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

2. District Courts have exclusive jurisdiction over FTCA claims. *See* 28 U.S.C. § 1346(b)(1) ("[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

3. The FTCA, however, does not waive the sovereign immunity of the United States entirely. *See Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021).

4. For example, under the discretionary function exception, the United States preserves its sovereign immunity from:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

5. To determine whether the discretionary function exception applies, courts apply a two-part test. *Esquivel*, 21 F.4th at 573.

6. "First, courts must determine whether the challenged actions involve an 'element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). This inquiry asks whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536

(1988). If a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, "the inquiry comes to an end because there can be no element of discretion . . . ." *Esquivel*, 21 F.4th at 573. If, however, a federal statute, regulation, or policy does not specifically prescribe a course of action for an employee to follow, then the challenged actions involve an element of judgment or choice, and courts proceed to the second step. *See id.* at 574.

7. At the second step, courts "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The discretionary function exception "protects only government actions and decisions based on social, economic, and political policy." *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015) (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)). "The decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller*, 163 F.3d at 593.

8. Here, because the Court previously found that Defendant established step two of the discretionary function exception, *see* Op. & Order 15–18, ECF No. 130, the Court's conclusions address only step one of the discretionary function exception—whether a federal statute, regulation, or policy specifically prescribes a course of action for a BLM employee to follow.

**II. East Steens Road**

1. East Steens Road is a public road as defined under BLM Engineering Manual 9100. *See* Ex. 548, at 28. It is "[p]art of a public agency road system"—the Harney County Road System; it is under the jurisdiction of and maintained by Harney County—a public authority; and it is open to public travel. Ex. 548, at 28; *see also* 23 U.S.C. §§ 101(a)(22)–(23).

2. East Steens Road is thus "not within the BLM's jurisdiction, does not receive support from BLM construction or maintenance funds, and is not subject to BLM regulations." Ex. 548, at 28; *see also* Tr. 626:2–9.

3. "The BLM presently administers no 'legal' public roads." Ex. 548, at 28.

4. In fact, "[a]ppropriated [BLM] funds may not be used to construct, improve, or maintain roads not owned or controlled by the [BLM], or otherwise authorized." Ex. 25, at 11.

5. Because East Steens Road is a public road under the jurisdiction of and maintained by Harney County, BLM Roads Manual MS 9113 does not apply. *See* Ex. 25, at 4 ("This Manual Section provides for [BLM] road standards . . . ."); *id.* at 7 ("[BLM] roads are not currently designated as public roads."). BLM Roads Manual MS 9113 contains standards relating to cattle guard width and signage. *See* Ex. 25, at 13–14.

6. Defendant thus establishes that no federal statute, regulation, or policy specifically prescribes a course of action for a BLM employee to follow with respect to East Steens Road—a public road under the jurisdiction of and maintained by Harney County.

**III. The Cattle Guard**

1. Under the BLM Facility Maintenance Manual 9104, "[m]aintenance, including condition assessments, of the BLM constructed assets is the responsibility of the BLM, unless a formal agreement has transferred such responsibility to another user." Ex. 549, at 4–5; *see also* Tr. 120:18–24.

2. The Cattle Guard is a BLM constructed asset. *See* Tr. 600:4–11; Ex. 73.

3. The 2001 FLPMA ROW did not expressly transfer maintenance responsibility of the Cattle Guard to Harney County. *See* 43 C.F.R. § 2805.15(c) ("The United States retains and may exercise any rights the [ROW] grant does not expressly convey to you[, including,] the

resources of the land, including timber and vegetative or mineral materials and any other living or non-living resources."); Tr. 623:15–624:3 (testifying that cattle guards are considered "non-living resources"); *see also* Tr. 126:4–19; 128:7–9; Ex. 22.

4. Nor was there any other formal agreement transferring maintenance responsibility of the Cattle Guard to anyone else, including Harney County. Tr. 618:7–25; Revised Dep. Designations 24–25, 60.

5. Maintenance responsibility of the Cattle Guard, including condition assessments, thus remained with BLM. *See* Ex. 549, at 4–5.

6. Plaintiff, however, does not cite to any additional federal statute, regulation, or policy that specifically prescribes a course of action for a BLM employee to follow with respect to the maintenance of the Cattle Guard, including condition assessments.

7. Plaintiff references past inspections of the Summit Creek Drift Fence project from 1961 and 1977, Ex. 6; Revised Dep. Designations 7, but fails to cite to any authority that requires BLM to maintain the Cattle Guard to certain specifications or conduct condition assessments at a certain interval.

8. Plaintiff, instead, refers to BLM Fencing Handbook H-1741-1, which provides that "[c]attleguards with an adjacent gate must be installed on heavily used roads." Ex. 27, at 6; *see also* Tr. 604:25–605:6.

9. Plaintiff also refers to the BLM Renewable Resource Improvements and Treatments Manual 1740, which provides that "[r]enewable resource improvements, treatments, and related facilities must be constructed to [BLM] standards . . . ." Ex. 29, at 13; *see also* Tr. 605:23–606:18; 660:4–10. Plaintiff asserts that the construction standards associated with this

manual provision include the structure width standards as set forth in BLM Roads Manual 9113. *See* Pl.'s FF&CL 19–20; *see also* Ex. 25, at 13.

10. The Court finds these provisions unpersuasive.

11. First, as to the BLM Fencing Handbook H-1741-1, Plaintiff does not allege that Defendant was negligent in failing to install a cattle guard. *See* Compl. ¶¶ 29(a)–(j). The Court thus finds this manual provision inapplicable to the current case. *See Young v. United States*, 769 F.3d 1047, 1054 (9th Cir. 2014) ("Our cases make clear that when determining whether the discretionary function exception applies in a particular case, the question of how the government is alleged to have been negligent is critical." (internal quotation marks omitted)).

12. Second, as to the BLM Renewable Resource Improvements and Treatments Manual 1740, the construction standards do not explicitly reference the BLM Roads Manual 9113, but instead refer to various other manuals, including "Manual Sections 9102, 9103, 9220, and the Engineering Guide Specifications and Standard Drawings, etc." Ex. 29, at 13. The Court finds this omission dispositive because, for there to be no element of discretion, there must be a "federal statute, regulation, or policy specifically prescrib[ing] a course of action . . . ." *Berkovitz*, 486 U.S. at 536.

13. Accordingly, the Court finds that Defendant's challenged actions with respect to the Cattle Guard involve an element of judgment or choice because there is no federal statute, regulation, or policy specifically prescribing a course of action for BLM to follow.

**IV. Manual on Uniform Traffic Control Devices (MUTCD)**

1. Under the BLM National Sign Handbook H-9130-1, the "BLM *must* . . . meet specifications established in the [MUTCD] for vehicle and pedestrian traffic control signs . . . ." Ex. 31, at 2–3 (emphasis added).

2. “Traffic control devices and bases *must* be constructed, located, installed, and maintained according to MUTCD standards.” Ex. 31, at 3 (emphasis added).

3. MUTCD standards apply even if the road is a public road. Revised Dep. Designations 32, 38; Ex. 31, at 3 (“The MUTCD is the national standard for all traffic control devices, including signs, markings . . . and other devices used to control traffic on all roads open to public travel.”).

4. Plaintiff previously asserted that that the signage at the accident site did not comply with MUTCD specifications. *See* Saberian Decl. ¶¶ 9–13, ECF No. 111-29.

5. The Court finds that the MUTCD specifications, combined with the mandatory language from the BLM National Sign Handbook H-9130-1, prescribe a specific course of action for Defendant to follow—in this case, maintaining traffic control devices on BLM lands according to MUTCD specifications. *See* Ex. 31, at 2–3.

6. Accordingly, the Court finds that Defendant has not established that its challenged actions relating to signage at the accident site involve an element of judgment or choice—the first step of the discretionary function exception. *See Nat’l Union Fire Ins. v. United States*, 115 F.3d 1415, 1421 (9th Cir. 1997) (holding that the defendant established the first step of the discretionary function exception because “there was no regulation or policy requiring the Corps to monitor the breakwater height and assure that it continued to conform to its design specifications”).

7. The Court thus finds it has subject-matter jurisdiction over Plaintiff’s FTCA negligence allegations relating to inadequate signage at the accident site. *See* Compl. ¶¶ 29(g), (i).

## CONCLUSION[4]

Based on the foregoing Findings of Fact and Conclusions of Law, the Court concludes that the discretionary function exception applies to all of Plaintiff's negligence allegations, *see* Compl. ¶¶ 29(a)–(j), except paragraphs 29(g) and 29(i). Accordingly, the Court will proceed to a Phase 2 Court Trial with a Pretrial Conference set for March 15, 2027, and a 5-day Court Trial set to begin on March 22, 2027. The Court further GRANTS in part and DENIES in part Defendant's Motions in Limine [155]. IT IS SO ORDERED.

DATED this 31st day of August, 2026.

AMY M. BAGGIO
United States District Judge

[4] In light of the foregoing Findings of Fact and Conclusions of Law, which do not rely on BLM Roads Inventory and Condition Assessment Guidance & Instructions Manual H-9113-2, the Court denies Defendant's Request for Judicial Notice, ECF No. 186, as moot.